**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

November 25, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Pamela F., v. Commissioner of the Social Security Administration*
Civil No. 8:26-cv-01118-JMC

Dear Counsel:
`

Pamela Freeland ("Plaintiff") petitioned this Court on March 17, 2026, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 11, 13). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the case to the SSA for further consideration for the reasons explained below.

## I. Procedural Background

On June 8, 2018, Plaintiff filed a Title II application for a period of disability and disability benefits, alleging disability beginning October 10, 2014. (Tr. 547-548).[1] The SSA initially denied Plaintiff's application on August 3, 2018, and upon reconsideration on January 3, 2019. (Tr. 239-241, 245, 246-248, 250-252). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge. ("ALJ"). (Tr. 253-254). On February 13, 2020, ALJ Andrew M. Emerson conducted a telephone hearing where Plaintiff appeared and testified with counsel. (Tr. 91-132, 2531-2572). On September 29, 2020, ALJ Emerson subsequently denied Plaintiff's claim. (Tr. 204-231). Thereafter, Plaintiff requested that the Appeals Council review the decision of the ALJ. (Tr. 316-317). On January 15, 2021, the Appeals Counsel granted Plaintiff's request for review and remanded the claim for further proceedings. (Tr. 232-234).

On April 13, 2022, ALJ Emerson conducted a supplemental hearing, (Tr. 39-81, 2573-2615), and denied Plaintiff's application on August 24, 2022. (Tr. 14-38, 2494-2518). The Appeals Counsel denied Plaintiff's request for review, (Tr. 1-8, 544-545, 2486-2490), but the case was remanded by this Court. (Tr. 2519-2525).

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

On March 14, 2025, ALJ Emerson conducted a second supplemental hearing, but issued a show cause order because of Plaintiff's absence. (Tr. 2471-2485, 2687).

On August 5, 2025, ALJ Emerson conducted a third supplemental hearing, (Tr. 2446-2470), and denied Plaintiff's claim. (Tr. 2417-2432). On February 23, 2026, the Appeals Counsel denied review, rendering the ALJ's decision the final decision of the SSA. (Tr. 2409-2414).

## II. The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one, the ALJ found that Plaintiff had not engaged in substantial activity since October 10, 2014, the alleged onset date. (Tr. 2422).

At step two, the ALJ determined that Plaintiff has the following severe impairments: "obesity, bilateral chondromalacia of the patella, osteoarthritis of the knees, status-post bilateral knee meniscus tears, status-post right knee arthroscopy with lateral meniscectomy, chondroplasty, and excision of loose body, asthma, Post-traumatic stress disorder (PTSD), major depressive disorder, bipolar disorder, anxiety, and attention deficit disorder (ADD) (20 CFR 404.1520(c))." *Id*. at 2423.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). *Id.*

Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally operate foot control operation bilaterally, occasionally climb ramps and stairs, balance stoop, kneel, crouch, and crawl. Never climb ladders, ropes, and scaffolds. Avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, pulmonary irritants, such as fumes, odors, dust, gases, and poorly ventilated areas, hazardous moving machinery, and unprotected heights. Simple, routine, repetitive, low-stress (no strict production quotas, no assembly line pace work) work involving occasional interaction with supervisors, co-workers, and the general public. Can tolerate occasional changes in a routine work setting.

*Id*. at 2425-2426. The ALJ reasoned:

> In sum, the Administrative Law Judge notes that Ms. Freeland was obese with a BMI as high as 49 (Exhibit B5F/4). She had moderate asthma (Exhibit B8F/19). Due to the combined effect of obesity and moderate asthma the claimant was limited to sedentary lifting. The claimant had mild to moderate osteoarthritis of the knees, bilateral chondromalacia patellae, and a history of bilateral meniscus tears with arthroscopy (Exhibit B9F/22). Due to the combined effect of her obesity and knee impairments the claimant was limited to 2 hours stand/walk. Notably, the claimant, upon examination, was typically found to be able to walk normally and have a normal station without a cane (Exhibits B1F/8, B8F/13, and B21F/4). In treatment, even when she is observed to have an antalgic gait, she is not observed to be using a cane (Exhibit B1F/12). Thus, she should have been able to perform the standing and walking associated with sedentary work without the use of a cane. Mentally, the claimant's psych meds are effective as they improve mood (Exhibit B6F/15). She has a good response to Zoloft (Exhibit B6F/32). The vast majority of the claimant's clinical signs on mental status examination are normal, particularly after restarting psych meds after returning to Maryland and/or when psych meds are used properly with many entire mental status examinations being completely normal, for example, Exhibit B6F/30/15. Thus, moderate mental limits are found.
>
> With regard to the particular concerns expressed by the District Court, it is further emphasized that the claimant's representative's additional restrictions posed in his hypothetical questions to the vocational expert that the claimant must stand for 15 minutes out of every 30 minutes and/or must sit and stand at 30-minute intervals is not supported by the record. The claimant remained able to sit for 2-hour intervals while traveling back and forth from Maryland to North Carolina via Amtrak train and the claimant remained able to perform the sitting and standing necessary to attend religious services, i.e., for durations less than 30 minutes at a time (Exhibits B6A, B4A, B12A, B27F/231). The claimant did not require a cane for standing or ambulation as she had a normal gait without an assistive device (Exhibits B1F/8, B21F/4, B8F/13, and B10F/55). Even when an antalgic gait was found in examination, there was no accompanying cane use (Exhibits B1F/8/12, B21F/4, B8F/13, B10F/55). Also notable is the fact that the claimant was able to perform

> the standing and walking necessary to take a train from Washington to Fayetteville North Carolina and back after she had the right knee surgery in July 2018 (Exhibit B27F/231/239). Further, the claimant's representative's further restriction posed in his hypothetical question to the vocational expert that the claimant would need to utilize a cane in her right hand to stand is not supported by the record. In treatment examinations, the claimant did not require a cane to stand. In fact, the claimant's treatment examinations show that she could stand and walk without a cane (Exhibits B1F/8/12, B21F/4, B8F/13, B10F/55). The claimant would not be off task during the workday and would not be absent from work because the claimant retained the endurance necessary to move back and forth from Maryland to North Carolina and travel by Amtrack train (Exhibits B6A, B27F/231). Also, the claimant's physical examinations did not show a loss of strength in her upper extremities that would affect her ability to lift. In fact, the claimant's physical examinations showed that she had normal strength in her upper extremities (Exhibits B1F/8/12, B21F/4). Thus, she should have had no difficulty performing the lifting demands of sedentary work.
>
> Thus, the undersigned has appropriately accommodated the claimant's impairments with the limitations set forth above. The claimant is limited to a reduced sedentary exertional level with postural, environmental, and mental limitations due to the combined effects of obesity, bilateral chondromalacia of the patella, osteoarthritis of the knees, status-post bilateral knee meniscus tears, status-post right knee arthroscopy with lateral meniscectomy, chondroplasty, and excision of a loose body, asthma, PTSD, major depressive disorder, bipolar disorder, anxiety, and ADD (Ex. B1F, B5F, B8F, B12F, B27F).

*Id.* at 2427-2428. At step four, the ALJ found that Plaintiff could not perform any past relevant work. *Id.*

Finally, given Plaintiff's age, education, work experience, and RFC, the ALJ determined that since December 31, 2018, the date last insured, Plaintiff could make "a successful adjustment to other work that existed in significant numbers in the national economy." *Id.* at 2431. The ALJ determined that Plaintiff could perform the following jobs: (1) Ticket Checker (DOT Code 219.587-010, Sedentary, SVP 2, with 8,000 positions available nationally); (2) Touch-up Screener (DOT Code 726.684-110, Sedentary, SVP 2, with 1,200 positions available nationally); (3) and Film Inspector (DOT Code 726.684-050, Medium, SVP 2, with 1,000 positions available nationally). *Id.* at 2430. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, from October 10, 2014, through December 31, 2018. *Id.* at 2431.

## III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation

and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## IV. Analysis

Plaintiff argues on appeal that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 11 at 10-13). Plaintiff faults the ALJ for failing to properly assess and document her exertional capabilities, as required by SSR-98-8p, and her mental limitations. *Id*. at 13-17. Plaintiff also asserts that the ALJ failed to properly evaluate her substantive complaints. *Id.* at 19-30. For the reasons that follow, the Court agrees. As such, I will remand the case.

### A. The ALJ's RFC Determination Must be Supported by Substantial Evidence, i.e. a Function-by-Function Assessment

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CDA-23-0947, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "a proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," nevertheless, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original). Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as

when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

B. <u>The ALJ Failed to Conduct a Function-by-Function Assessment as Set Forth by Social Security Ruling 96-8p</u>

As an initial matter, Social Security Rulings ("SSRs") "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the SSA. 20 C.F.R. § 402.35(b)(1). Though an ALJ need not refer to an SSR in his or her opinion, the ALJ's decision must be based upon proper application of the correct legal standards supported by substantial evidence. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). Relevant here, SSR 96-8p provides that:

> "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."

A function-by function assessment is required where a function is "critically relevant" to determining a claimant's disability status. *Dowling*, 986 F.3d at 389. If relevant or contested, the following functions are required to be considered by an ALJ during the RFC analysis: "*sitting*, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), [that] may reduce [claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(b) (emphasis added). Only after conducting the required function-by-function assessment can the RFC be expressed through physical exertional requirements of work. *Mascio*, 780 F.3d at 636. Thus. remand is appropriate when the ALJ fails to perform such an analysis. *See Venkata P. v. Commissioner, Soc. Sec. Admin*., No. SAG-23-2103, 2024 WL 2273565, at *4 (D. Md. May 20, 2024) (remanding where an ALJ failed to explain how the claimant could fulfill each of the implicit exertional requirements of sedentary work).

Here, the ALJ found that Plaintiff can participate in jobs that are classified as sedentary. Turning to the physical exertion requirements of work relevant to the case *sub judice*, 20 C.F.R. § 404.1567(a) defines sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Based on Plaintiff's contentions and the evidence in the record, it is clear that Plaintiff's ability to sit is particularly relevant to a proper RFC analysis regarding Plaintiff's ability to perform

sedentary work. However, the ALJ failed to perform a proper function-by-function analysis of the functions relevant to sedentary work, specifically in regard to Plaintiff's heavily contested sitting limitations.

The ALJ prematurely concluded that Plaintiff could perform sedentary work without narratively discussing the extent that Plaintiff can sit. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Berryhill*, 858 F.3d at 869 (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also Taylor v. Astrue*, No. BPG-11-0032, 2012 WL 294532 at *6 (D. Md. Jan. 31, 2012) (holding that the ALJ's lack of discussion regarding claimant's sitting functions was not an error because the ALJ provided "a full narrative of his consideration of the evidence on file, specifically taking note of *all* the evidence presented by [claimant] with regard to her exertional limitations and explaining why that evidence was not compelling.") (emphasis added). Unlike the ALJ in *Taylor*, the ALJ in this case failed to specifically take note of the evidence, including treatment records and testimony of the Plaintiff, that point to the conclusion that Plaintiff is significantly limited in her ability to sit. For example, Plaintiff testified at the hearing that she could only sit for 15 to 20 minutes. (Tr. 2462) ("[T]he more I sit now, more it hurts, because I can't sit that long. That's why I lie down a lot. Because my back, because of the lower part of my back, because of the arthritis, and I get injections and stuff in my back now … it hurts when I sit in a chair, like an upright chair. It hurts. It hurts my back really bad, my lower part of my back." *Id*. She also testified that can't do long distance driving or riding and primarily stays in the house, barring any doctor appointments. *Id*. at 2463. Instead, the ALJ simply mentions Plaintiff's 'ability' to "sit for 2-hour intervals while traveling back and forth from Maryland to North Carolina via Amtrak train" and her ability to sit and stand as "necessary to attend religious services, i.e., for durations less than 30 minutes at a time." (Tr. 2428). Although, Plaintiff testified that she only travelled to North Carolina to be treated by her doctor and she stopped making the trip after a couple of times because it was too painful. *See* (Tr. 2456-2457).

If the ALJ found that Plaintiff was unable to sit for a prolonged period of time, i.e., for 6 hours out of an 8-hour workday, Plaintiff "likely would have been deemed incapable of performing sedentary work." *Dowling*, 986 F.3d at 389. Thus, because the parties disagree over the extent that Plaintiff can sit, the ALJ's assessment of Plaintiff's ability to sit becomes "critically relevant to determining her disability status ...." *Id.* By precluding a discussion of evidence that supports a finding that Plaintiff is impaired in her ability to sit, it is unclear how the ALJ arrived at an opposite conclusion. *Id.* at 388 ("The ALJ apparently concluded that Appellant was not restricted in her ability to sit, as she did not indicate that her RFC was limited because of those problems. This conclusion should have been accompanied by 'a narrative discussion describing' the evidence supporting it.") (quoting *Thomas*, 916 F.3d at 311)). Therefore, a proper narrative discussion, including a discussion of evidence that lends support to Plaintiff's alleged impairment, should have accompanied the ALJ's conclusion regarding the sitting function.

The ALJ failed to perform a proper function-by-function analysis regarding Plaintiff's ability to perform the work functions relevant to sedentary work. Therefore, the Court cannot conclude that substantial evidence supports the ALJ's final determination. Accordingly, the Court shall remand the case. *See Nicole C. v. Kijakazi,* No. JMC-22-02123, 2023 WL 4027481, at *6 (D.

Md. June 15, 2023) (holding that where the ALJ failed to perform the proper function-by-function assessment regarding the function of sitting, the case had to be remanded for lack of substantial evidence to support a decision). The Court declines to address Plaintiff's additional allegations of error by the ALJ.

## V. Conclusion

In sum, the Court agrees with the Plaintiff that the ALJ failed to adequately explain Plaintiff's RFC. In other words, the ALJ's determination that Plaintiff can perform sedentary work is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED for further proceedings. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge